Megan E. Guenther, D.C. Bar No. 494399
Plan Benefits Security Division
Office of the Solicitor
U.S. Department of Labor
200 Constitution Avenue NW, Room 4611
Washington, D.C. 20210
Tel: (202) 693-5586
Fax: (202) 693-5611

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUL 27 2007
J T NOBLIN, CLERK
BY ______ DEPUTY

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

Plaintiff,

v.

MISSISSIPPI STATE MEDICAL ASSOCIATION and
MISSISSIPPI STATE MEDICAL ASSOCIATION
BENEFIT PLAN AND TRUST,

Defendants.

Civil Action
3:07cv440 DPJ-JCS

ELAINE L. CHAO, Secretary of Labor, the United States Department of Labor ("the Secretary"), alleges:

**JURISDICTION AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and is brought by the Secretary of Labor under ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), to obtain relief for breaches of fiduciary duty under ERISA § 409, to enjoin acts and practices which violate the provisions of Title I of ERISA, and to obtain other appropriate equitable and injunctive relief to redress violations and enforce the provisions of that Title.

2. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3. Venue of this action lies in the Southern District of Mississippi pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**PARTIES**

4. Plaintiff, Elaine L. Chao, Secretary of Labor, pursuant to ERISA §§ 502(a)(2) and (5) , 29 U.S.C. §§ 1132(a)(2) and (5), is vested with the authority to enforce the provisions of Title I of ERISA, by, among other means, the filing and prosecution of claims against fiduciaries and other parties who commit violations of Title I of ERISA.

5. Defendant Mississippi State Medical Association ("MSMA") is a professional membership association, based in Ridgeland, Mississippi, for physicians, residents and medical students in Mississippi. On a day-to-day basis, MSMA is governed by and acts through an elected board of trustees and through its executive staff, including its executive director. MSMA established the Mississippi State Medical Association Benefit Plan and Trust ("Plan") in the 1980s to provide health, life and other welfare benefits to MSMA members and their staff, dependents and beneficiaries.

6. At all times relevant to this action, MSMA was a named fiduciary to the Plan and the Plan Administrator. At all times relevant to this action, MSMA, through its board of trustees, had authority to appoint and remove members of the Plan's benefit committee and trustees to the Plan. MSMA, through its board of trustees, exercised discretionary authority or discretionary control respecting management of the Plan or exercised authority or control respecting management or disposition of the Plan's assets or had discretionary authority or discretionary

responsibility in the administration of the Plan. Thus, MSMA was a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) at all times relevant to this action.

7. At all times relevant to this lawsuit, the Plan was a self funded employee welfare benefit plan operating within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

8. Alternatively, the Plan held the assets of several "employee welfare benefit plans" within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), each of which was established by individual physician employers who paid contributions for the benefits offered by the Plan.

9. In either event, the assets of the Plan are subject to coverage under ERISA pursuant to ERISA § 3(1), 29 U.S.C. § 1002(1).

10. The Plan is joined in this lawsuit for the purpose of ensuring complete relief among the parties under Fed. R. Civ. P. 19.

**FACTUAL ALLEGATIONS**

11. Pursuant to the Plan and Trust Agreement governing the Plan, MSMA, through its Board of Trustees, appointed a benefit committee to serve as named fiduciaries under ERISA with authority to control and manage the operations and administration of the Plan. The benefit committee's responsibilities included establishing a funding policy for the Plan considering the Plan's short- and long-run financial needs. The benefit committee had the authority to establish the time and amount of each employer's contributions to the trust, which were to be projected actuarially by the benefit committee to cover the cost of projected claims, the administrative charges and other required payments by the Plan. The benefit committee had authority to increase or decrease contributions quarterly if the actual claims experience required such a change in order to make contribution rates actuarially sound.

12. The benefit committee exercised discretionary authority or discretionary control respecting management of the Plan or exercised authority or control respecting management or disposition of the Plan's assets or had discretionary authority or discretionary responsibility in the administration of the Plan. Thus, the benefit committee members were fiduciaries of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) at times relevant to this action.

13. Members of MSMA's executive staff including William F. Roberts, MSMA's executive director, and Jackye Wiebelt, MSMA's Director of Health Care Financing and Delivery, served as cotrustees of the Plan beginning in 2000. Wiebelt and Roberts exercised discretionary authority or discretionary control respecting management of the Plan or exercised authority or control respecting management or disposition of the Plan's assets or had discretionary authority or discretionary responsibility in the administration of the Plan during times relevant to this action. Thus, Roberts and Wiebelt were fiduciaries of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) at times relevant to this action.

14. Until her resignation in August 2001, Wiebelt set annual contribution rates and benefit levels for new and existing physician employer groups participating in the Plan without consulting with an actuary or taking other measures to adequately determine the level of funding needed to support the benefit levels set by the Plan, establish proper rates for contributions to the Plan, and maintain adequate reserves.

15. In setting the annual contribution rates for existing employer groups, Wiebelt consulted with consultant, James Butler, who was not an actuary. Wiebelt generally sought no assistance from Butler or any other actuarial consultant in setting the contribution rates for new employer groups and created new health benefit packages for new employer groups without seeking advice from Butler or any other actuarial consultant to determine the actuarially sound

employer contribution rate for the group or benefit package. As late as 2001, Wiebelt set contribution rates for new groups based on outdated, standard premium rate schedules to which Wiebelt applied a variety of discounts and incentives.

16. From at least 1996 through 2003, the Plan's audited annual financial statements showed that the Plan's benefit obligations, which included claims payable and claims "incurred but not reported", exceeded the Plan's assets available for benefits. The Plan's auditor presented the results of the Plan's annual audit both to the benefit committee and to the MSMA Board of Trustees at least annually.

17. Through 2001, the benefit committee and Roberts were informed of the contribution rate increases set by Wiebelt and knew that increases were set in consultation with Butler, who was not an actuary. The benefit committee and Roberts were informed of the results of the Plan's annual audit and other information indicating that the Plan's funding was insufficient to ensure that the Plan could meet its future benefit obligations. The benefit committee and Roberts took no actions to review and revise the processes used to set contribution rates and benefit levels for new and existing groups, took no action to establish adequate reserves for the Plan, and took no actions to formulate a funding policy that would adequately take into consideration the Plan's long and short term needs. The benefit committee and Roberts also took no actions to inform the Plan's participants and beneficiaries of the Plan's underfunding or to advise them that the Plan was actuarially unsound so that the participants and beneficiaries could seek alternative health insurance arrangements.

18. Through 2001, MSMA, through Roberts and Wiebelt, through presentations made to the MSMA Board of Trustees by the Plan's auditor, and through consultation between the Board of Trustees, Roberts, and members of the benefit committee, knew or should have known

of the Plan's underfunding. MSMA also knew that the benefit committee and Roberts had not taken actions to review and revise the processes used to set contribution rates for new and existing groups, establish adequate reserves, or formulate a funding policy that would adequately take into consideration the Plan's long and short term needs. MSMA took no actions to replace the benefit committee, Roberts, or Wiebelt. MSMA took no actions to ensure that a funding policy was formulated for the Plan or to ensure that the processes used to set contribution rates, benefits levels, and reserves for the Plan were reviewed or revised. MSMA took no actions to ensure that the Plan was actuarially sound. MSMA also failed to inform the Plan's participants and beneficiaries of the Plan's underfunding or to advise them that the Plan was actuarially unsound so that the participants and beneficiaries could seek alternative health insurance arrangements.

19. In August 2001, Wiebelt resigned. Butler retired in late 2001. Cathy Stringer assumed Wiebelt's job duties. The benefit committee hired enrolled actuary Michael Conefry to take Butler's place. During 2002, Conefry requested documents from the Plan, but the Plan did not timely supply Conefry with the requested information. Not until October 2002 did Conefry inform the benefit committee of his preliminary analysis of the rate increase that would be necessary to adequately fund the Plan.

20. During 2002, the Plan also experienced a large increase in claims that more than tripled the deficit reflected in the Plan's annual financial statements from more than $850,000 to more than $3.3 million. Despite a rate increase in January 2003, made at Conefry's recommendation, by July 2003, the Plan had over $2 million in claims that it could not pay. In August 2003, the benefit committee voted to further increase rates in order to address the Plan's cash shortfall. In November 2003, the MSMA Board of Trustees voted to terminate the Plan

effective January 1, 2004. At termination, the Plan had over $5 million in unpaid claims. MSMA failed to take reasonable measures to protect Plan participants from claims by the creditors of the Plan resulting from the Plan's termination.

**ERISA VIOLATIONS**

21. Paragraphs 1 through 20 are realleged and incorporated herein by reference.

22. Through the conduct and omissions described herein, Wiebelt, Roberts and the benefit committee members breached their duties under ERISA to (1) act with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, (2) to discharge its duties with respect to the Plan solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of the Plan, and (3) to act in accordance with the documents and instruments governing the plan, in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D).

23. Through the conduct and omissions described herein, Defendant MSMA breached its duties under ERISA to (1) act with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, (2) to discharge their duties with respect to the Plan solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of the Plan in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B). In particular, MSMA failed to adequately monitor the activities of the benefit committee members, Wiebelt, and Roberts to ensure that they complied with their

fiduciary duties under ERISA. In addition, MSMA failed to replace these individuals or take other steps to protect the Plan when the benefit committee, Roberts, and Wiebelt breached their duties under ERISA. As a result, MSMA breached its own fiduciary duties under ERISA and caused the Plan to suffer a loss for which MSMA is liable under ERISA § 409(a), 29 U.S.C. § 1109(a).

24. Through the breaches described above, MSMA knew of and enabled the breaches of the benefit committee members, Roberts, and Wiebelt. Defendant MSMA is therefore liable as a cofiduciary under ERISA § 405(a), 29 U.S.C. § 1105(a) for the fiduciary breaches of the benefit committee members, Roberts, and Wiebelt.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Secretary of Labor requests that the Court enter an Order:

1. Requiring MSMA to restore losses plus interest, incurred by the Plan as a result of MSMA's violations of ERISA;

2. Removing MSMA from any position it may currently hold with respect to the MSMA Plan as a fiduciary or service provider, and enjoining MSMA from providing health, disability or other welfare benefits through an ERISA-covered plan or arrangement, except through a plan or arrangement that is fully insured by an insurance company licensed to do business in the state of Mississippi;

3. Permanently enjoining MSMA from violating ERISA;

4. Appointing an independent fiduciary at Defendant MSMA's expense with authority and control over the management and administration of the Plan including the authority to marshal assets on behalf of the Plan, pursue claims on the Plan's behalf, and take all

appropriate actions for the rehabilitation or liquidation of the Plans' assets and distribution of assets to the Plan participants, beneficiaries, and creditors as may be necessary and proper.

5. Exercising equitable jurisdiction under the All Writs Act, 28 U.S.C. § 1651, ERISA, and the federal common law to impose a quasi bankruptcy proceeding for the protection of the Plan and its participants and beneficiaries to ensure that the equitable policies underlying ERISA are satisfied;

6. Ordering Defendant MSMA, its agents, employees, service providers, banks, accountants, and attorneys to cooperate fully with the Independent Fiduciary by:

a. Providing reasonable and necessary assistance to the Independent Fiduciary, when asked, concerning questions pertaining to the operation of the MSMA Plan and other issues necessary to determine eligibility for benefits under the Plan;

b. Making available to the Independent Fiduciary all books, records, bank accounts, electronic hardware and software, data files however stored, and any indicia of ownership of the assets of the MSMA Plan;

c. Making available to the Independent Fiduciary documents of every nature relating in any way to the MSMA Plan's management and operation; and

d. Assisting the Independent Fiduciary, when requested, in negotiations with medical care providers and in taking appropriate action to remedy any adverse credit reports that participants or beneficiaries have sustained as a result of the MSMA Plan's nonpayment of the participants' medical bills;

7. Awarding the plaintiff Secretary of Labor the costs of this civil action; and

8. Providing such other relief as is equitable and just.

DATED: 7/27/2007

Respectfully Submitted,

JONATHAN L. SNARE
Acting Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor
Plan Benefits Security Division

LESLIE C. PERLMAN
Counsel for Fiduciary Litigation

MEGAN E. GUENTHER
Trial Attorney

Attorneys for Plaintiff
ELAINE L. CHAO
Secretary of Labor,
U.S. DEPARTMENT OF LABOR

ALFRED B. JERNIGAN, Jr., MS Bar No. 3088
MITZI PAIGE, MS Bar No. 6014
Civil Division, U.S. Attorney's Office
Jackson, Mississippi